CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 08 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:13CR00059 |
| | ) | (Civil Action No. 7:17CV81241) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SAMUEL LEWIS FENNELL, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Senior United States District Judge |

Samuel Lewis Fennell has filed a pro se motion to vacate, set aside, or correct his federal sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Fennell has responded, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted, and Fennell's motion to vacate will be denied.

## Background

Agents from the Roanoke, Virginia Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") suspected Quinton Germaine Tyree, a resident of Greensboro, North Carolina, of cocaine trafficking. Presentence Report 6, Docket No. 285; April 3, 2014 Suppression Hr'g 176, Docket No. 306. As part of an investigation into Tyree, ATF agents arranged for a confidential source to make a controlled purchase of a trafficking amount of cocaine from Tyree in Roanoke on July 1, 2013. April 3, 2014 Suppression Hr'g 176. Because investigators believed Tyree would travel from his residence in Greensboro to the controlled purchase in Roanoke, ATF Special Agent William Cunningham enlisted the assistance of Greensboro Detective Dwayne James to track Tyree's movements in Greensboro on July 1. Id.

While surveilling Tyree's apartment that day, Detective James saw Tyree exit the apartment and drive to a townhome complex on Bramblegate Drive in Greensboro. Id. at 177. Tyree parked beside a blue Pontiac minivan and entered Unit E, where he remained for a brief period before exiting the unit and driving back to his apartment. Id. Shortly thereafter, Tyree

and a woman, later identified as Tyree's girlfriend, left his apartment and began driving toward Roanoke in separate cars. Id. at 177-78. Investigators stopped both cars in Roanoke. Presentence Report 8. A trafficking amount of cocaine was found inside the girlfriend's car. Id. The investigators then took Tyree to an ATF office for an interview. April 3, 2014 Suppression Hr'g 179.

During the interview, Tyree admitted to picking up a trafficking amount of cocaine from the townhome unit on Bramblegate Drive and identified the source of his cocaine as "Sam" or "Samuel." Id. By that point, Detective James had run the tags on the minivan parked outside the townhome and learned that the vehicle was registered to the defendant, Samuel Fennell. Id. at 179-80. Detective James shared this information with ATF agents, who had discovered that Fennell had a prior federal drug conviction. Id. at 180.

Based on this information, Detective James and other officers in the Greensboro Police Department decided to further investigate Fennell. Id. On July 3, 2013, North Carolina Superior Court Judge Susan E. Bray issued to Detective James a warrant to search Fennell's residence. Id. at 185. After a "back and forth" between Fennell and Detective James, Fennell admitted to hiding cocaine in the dishwasher and a large sum of cash in an air vent. Id. at 193, 195. Police estimated that Fennell had stored approximately 14 ounces of cocaine in his residence. July 3, 2013 Report of Investigation, Docket No. 346-2, Ex. B. Police also recovered marijuana, $12,300 in U.S. currency, a Food Saver vacuum sealer, digital scales, and other drug paraphernalia. Id. Officers did not advise Fennell of his Miranda[1] rights at any point that day. April 3, 2014 Suppression Hr'g 220.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

On February 20, 2014, a grand jury returned a multi-count superseding indictment against Fennell, Tyree, and three others. Count One charged Fennell, Tyree, and Grier Gracin with conspiring to distribute, and possess with intent to distribute, five kilograms or more of a mixture or substance containing cocaine and 280 grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. The indictment alleged that the conspiracy spanned from 2010 to 2013.

Before trial, Fennell moved to suppress the evidence seized from his residence, arguing that probable cause did not support the warrant, and that police had interrogated him in violation of his Fifth Amendment rights. On April 3, 2014, the court held a hearing on the motion. The court denied the motion with respect to the warrant's validity, but granted it on Fifth Amendment grounds, thereby suppressing certain statements made by Fennell to police on July 3, 2013. Because some of those statements led police to the cocaine and other contraband seized from Fennell's residence, the court requested additional argument on whether the court's Fifth Amendment ruling required the suppression of the seized evidence.

At the second suppression hearing on April 29, 2014, Detective James testified to Tyree's statements during the July 1, 2013 interview, including Tyree's statement that he purchased narcotics from Fennell at the Bramblegate townhome on an almost weekly basis starting in 2010. April 29, 2014 Suppression Hr'g 18, 32-33, Docket No. 301. Defense counsel cross-examined Detective James about Tyree's grand jury testimony that normally Fennell dropped off the cocaine at Tyree's residence rather than requiring Tyree to pick it up at Fennell's residence. Id. at 33, 35-37. The court recognized that Tyree testified after Detective James applied for the search warrant. Id. at 36. Ultimately, the court concluded that the police would have eventually

3

discovered the seized evidence without Fennell's statements, and therefore, that the evidence was admissible under the inevitable discovery doctrine. Id. at 95.

Fennell then proceeded to trial, where, as pertinent here, the government introduced the testimony of Officer Shane Fisher, Tyree, Agent Campbell, and Senior Forensic Chemist Erin Angerer. Officer Fisher testified about stopping Fennell for a minor traffic violation on Interstate 40 in June 2012. During the stop, Officer Fisher thought that Fennell "appeared nervous," and believed that the presence of several air fresheners in the car indicated involvement in drug trafficking. Trial Tr. I at 209-10, Docket No. 302. Fennell denied having any drugs or a large amount of money in the car, but Officer Fisher found a bag containing $28,000 in cash hidden in a panel in the car. Id. at 223, 226. According to Officer Fisher's testimony, Fennell offered the following contradictory explanations for the money: that Fennell intended to buy a camera with the money, that the confiscated money did not belong to Fennell, and that the money belonged to Fennell. Id. at 226-28. Defense counsel cross-examined Officer Fisher about the lack of narcotics in Fennell's car. Id. at 242. Fennell's friend, Christopher Edwards, also testified that Fennell had told Edwards he intended to use the cash for the lawful purpose of purchasing camera equipment. Trial Tr. II at 71, Docket No. 304.

As part of a plea deal with the government, Tyree testified that, on July 1, 2013, he went to Fennell's unit at the Bramblegate townhome to pick up 13.5 ounces of cocaine, put the cocaine in a bag in his girlfriend's car, and then drove to Roanoke in his own car. Trial Tr. I at 119, 143-46. Tyree believed that he only sold cocaine hydrochloride, not cocaine base, during the course of the conspiracy. Id. at 148.

Finally, the government introduced testimony from Agent Cunningham and Senior Forensic Chemist Angerer regarding the drug evidence seized from Fennell's townhome. Agent Cunningham testified that, on July 12, 2013, he took possession of the seized evidence from Detective James. Trial Tr. II at 140-41. Agent Cunningham explained that he brought the evidence back to his office, processed it, packaged it, numbered it, and secured it in the Roanoke ATF evidence vault. Id. at 141. The ATF then sent the evidence believed to contain narcotics to a laboratory for testing. See id. at 133.

After being admitted as an expert witness, Angerer testified that she received the evidence at the laboratory in a "sealed and intact condition." Trial Tr. I at 173-75. She explained that she conducted a series of tests, which are widely recognized as valid in the scientific community. Id. at 177. The test results indicated that the evidence seized from Fennell's apartment contained 406.7 grams, or 14.3 ounces, of cocaine, most of which was determined to be cocaine base as opposed to cocaine hydrochloride. Chemical Analysis Reports, Docket No. 346-2; see Trial Tr. I at 187-190. Angerer also testified that the drugs seized from the car of Tyree's girlfriend on July 1, 2013 contained approximately 13 ounces of cocaine base. Trial Tr. I at 82, 186. According to Angerer, cocaine base can appear powdery like cocaine hydrochloride. Id. at 185-86. In such cases, as in this one, scientific testing of the substance is required to determine whether it is cocaine base or cocaine hydrochloride. Id.

After the government rested its case, Fennell indicated his desire to testify in his defense. The court advised Fennell of his right to remain silent and cautioned that, although the court had issued a pretrial ruling suppressing certain of Fennell's statements, the government could ask questions related to those statements if Fennell "open[ed] the door" by addressing the subjects of

the statements in his testimony. Trial Tr. II at 168-70. Fennell confirmed that he understood the potential consequences of testifying and asserted that he still wished to testify. Id. at 170.

Fennell then testified to dealing drugs and "sell[ing] cocaine sparingly," but denied participating in a conspiracy in which he supplied cocaine or other drugs to Tyree. Trial Tr. III at 38, Docket No. 250. Fennell admitted that the cocaine found in his residence belonged to him and that Tyree came to his residence on July 1, 2013. Id. at 14-15. However, Fennell explained that Tyree's visit concerned a fish tank that Fennell had bought from Tyree, not cocaine trafficking. Id. at 15-16.

After hearing the foregoing evidence, the jury found Fennell guilty of conspiracy to distribute cocaine hydrochloride and cocaine base. On November 3, 2014, the court designated Fennell as a career offender and sentenced him to 360 months' imprisonment. Fennell appealed the criminal judgment to the United States Court of Appeals for the Fourth Circuit, which affirmed the judgment on July 23, 2015. Fennell then filed a petition for a writ of certiorari in the United States Supreme Court, which denied the petition on April 18, 2016.

On April 14, 2017, the court received Fennell's instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the motion, Fennell claims that his sister reviewed his mail after trial and found a document dated August 7, 2013 from the North Carolina Department of Revenue assessing a tax penalty for Fennell's possession of 370 grams, or approximately 13 ounces, of cocaine. North Carolina Tax Form, Docket No. 346-2 Ex D. The tax form does not indicate whether the cocaine was cocaine hydrochloride or cocaine base. Fennell further asserts that he found an undated, uauthored note in the discovery files, which states "tell me about Bramblegate. We didn't decide until today for you to testif[y]. Lying is not

what you go around doing but based on circumstances, you may lie. Heat sealer. Scales."
Handwritten Note, Docket No. 346-2 Ex. E.

On July 5, 2017, the government moved to dismiss Fennell's § 2255 motion. Fennell filed a response to the government's motion on July 27, 2017. The matter is now ripe for review.

### Discussion

Fennell has moved for the appointment of counsel and to vacate, set aside, or correct his sentence under § 2255.

### I. Motion for Appointment of Counsel

There is no constitutional right to counsel during § 2255 proceedings. See Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995) ("[T]his Court has held that the Constitution does not require counsel for defendants who attack their judgments under 28 U.S.C. § 2255."). Nonetheless, a court may provide counsel for an indigent inmate pursuing a § 2255 motion, when "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In addition, Rule 8 of the Rules Governing § 2255 Proceedings states that if an evidentiary hearing is warranted, counsel must be appointed to represent a moving party who qualifies for appointment of counsel under 18 U.S.C. § 3006A. Otherwise, the Fourth Circuit has limited the appointment of counsel to cases where "exceptional circumstances exist," such as when a case is particularly complex or a litigant is unable to adequately represent himself. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). In this case, the record makes clear that Fennell has the ability to adequately represent himself, that an evidentiary hearing is not required, and that there are no other exceptional circumstances that would necessitate the appointment of counsel. Accordingly, Fennell's motion for appointment of counsel will be denied.

## II. **Motion to Vacate**

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Fennell seeks to vacate his sentence based on ineffective assistance of counsel, prosecutorial misconduct, and cumulative error.

### A. **Ineffective Assistance of Counsel**

Claims of ineffective assistance are reviewed under the standard enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a defendant must satisfy "two necessary components." Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015). First, the defendant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, the defendant "must show that the deficient performance prejudiced the defense." Id. This requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Fennell asserts four claims of ineffective assistance of counsel, arguing that counsel was in effective in: (1) failing to call Tyree as a witness at the April 29, 2014 suppression hearing, (2)

failing to impeach Tyree's trial testimony, (3) failing to object to Officer Fisher's testimony about the June 2012 traffic stop, and (4) failing to investigate a laboratory report.

### 1. Failure to Call Tyree as a Witness at the April 29, 2014 Suppression Hearing

According to Fennell, defense counsel's performance was deficient in failing to call Tyree as a witness at the April 29, 2014 suppression hearing. At that hearing, Detective James testified that, in applying for a warrant to search Fennell's residence, he relied in part on Tyree's statement to ATF agents that Tyree regularly purchased narcotics at Fennell's townhome. Fennell appears to contend that, if defense counsel had called Tyree as a witness at the suppression hearing, Tyree would have offered the same testimony that he gave during the grand jury hearing – namely, that Fennell usually dropped off cocaine at Tyree's apartment rather than requiring Tyree to pick it up from Fennell's townhome.

The court believes that defense counsel's decision not to call Tyree as a witness at the suppression hearing was both reasonable and strategically sound. See Sexton v. French, 163 F.3d 874, 887 (4th Cir. 1998) ("The decision concerning what evidence should be introduced [in criminal trial proceedings] is best left in the hands of trial counsel, and reasonable tactical decisions by trial counsel in this regard are binding on the defendant."). Rather than risk adverse testimony from a cooperating government witness, defense counsel reasonably used Tyree's grand jury testimony to cross-examine Detective James.

Additionally, the record does not indicate that counsel's performance at the April 29 suppression hearing prejudiced Fennell. Fennell acknowledges that Tyree's grand jury testimony followed Detective James' application for the search warrant, and thus, did not affect the validity of the warrant. However, Fennell fails to apprehend that any testimony Tyree would have given

at the suppression hearing would have also been irrelevant to determining Detective James' knowledge when he applied for the search warrant. Fennell does not expressly argue, nor could he plausibly do so on this record, that Tyree would have testified that he actually told Detective James that Fennell normally dropped off cocaine at Tyree's apartment. Thus, Fennell has not established a reasonable probability that had Tyree testified at the suppression hearing, the outcome would have been different.[2]

## 2. Failure to Impeach Tyree's Trial Testimony

Fennell also asserts that counsel should have impeached the trial testimony of Tyree and various officers with evidence showing that Fennell could not have packaged the cocaine confiscated from Tyree's girlfriend's car on July 1, 2013. According to Fennell, that evidence includes the following: (1) the cocaine confiscated on July 1 was sealed in a Ziploc-brand bag; (2) Tyree owned a Ziploc-brand vacuum sealer; (3) police found a partially vacuum sealed Ziploc-brand bag in Tyree's trash; and (4) Fennell used a Food Saver-brand vacuum sealer and bags.

However, even assuming that counsel's performance was deficient, Fennell has failed to make a prima facie showing of prejudice. Regardless of who packaged the cocaine confiscated in connection with Tyree's arrest on July 1, the record contains ample evidence of Fennell's connection to Tyree's cocaine trafficking conspiracy, including Fennell's testimony that he sold cocaine and used a vacuum sealer to package cocaine, Tyree's testimony that he regularly bought cocaine from Fennell, and the testimony of the officers observing Tyree's visit to Fennell's

---

[2] Fennell also appears to argue that if Tyree's testimony at the suppression hearing did not result in the suppression of the evidence seized from Fennell's house, then that testimony could have been used to impeach the trial testimony of Tyree and various police officers. Such a claim is meritless because it requires significant speculation and substantial attenuation between defense counsel's conduct and the prejudice claimed.

residence on July 1 in advance of the planned controlled purchase. The court therefore believes that Fennell has not made a showing of a "probability sufficient to undermine confidence in the outcome of this case." Strickland, 466 U.S. at 694.

### 3. Failure to Object to Officer Fisher's Testimony

Fennell next argues that counsel provided ineffective assistance in failing to object to Officer Fisher's testimony regarding the June 2012 traffic stop. According to Fennell, defense counsel should have objected to the testimony as impermissible evidence of prior bad acts, admitted in violation of Rules 404(b) and 608(b) of the Federal Rules of Evidence. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Importantly, as with Rule 608(b), Rule 404(b) bars only "evidence of other acts that are extrinsic to the one charged." United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (internal quotation marks omitted) (emphasis added). Rule 404(b) does not bar the admission of intrinsic evidence. Id. "Evidence is intrinsic if it is necessary to provide context relevant to the criminal charges." Id. (internal quotation marks omitted).

After reviewing the record, the court is constrained to believe that Officer Fisher's testimony concerning the traffic stop was intrinsic to the conspiracy for which Fennell was charged, and thus, admissible. Although Fennell asserts that the government could not, and did not, prove that the money confiscated during the stop was connected to the conspiracy, the court

believes that the evidence was sufficiently relevant to the conspiracy to be admissible as intrinsic evidence. Specifically, Officer Fisher's testimony indicated that, during the period of the conspiracy, Fennell was travelling with a large sum of cash hidden in his car and multiple air fresheners, facts consistent with involvement in a drug trafficking conspiracy.

Alternatively, the court believes that Officer Fisher's testimony was admissible under Rule 404(b)(2), which permits the government to admit evidence of a defendant's prior bad acts in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Officer Fisher's testimony was at least probative of Fennell's preparation and planning for trafficking drugs.

Furthermore, Fennell did not suffer any prejudice from Officer Fisher's testimony. To the extent Fennell claims prejudice because he testified to refute Officer Fisher's testimony, the court finds this claim meritless because the court thoroughly cautioned Fennell about testifying before Fennell elected to do so, and the testimony of Edwards and cross-examination of Officer Fisher sufficiently conveyed the same point that Fennell's testimony did. Because Officer Fisher's testimony was admissible and Fennell did not suffer any prejudice, the court concludes that trial counsel was not ineffective in declining to object to the admission of Officer Fisher's testimony as improper character evidence.

### 4. Failure to Investigate a Laboratory Report

Finally, Fennell claims that counsel should have investigated the laboratory finding that police recovered 406.7 grams, or approximately 14.3 ounces, of mostly cocaine base from Fennell's residence. According to Fennell, he had only 12 ounces of cocaine hydrochloride in his residence. Had defense counsel investigated the laboratory finding, Fennell contends that

counsel would have discovered that the government had tampered with or fabricated the amount and type of cocaine seized from the Bramblegate townhome. As support for this argument, Fennell cites a North Carolina tax form assessing an unauthorized substance tax against Fennell for the possession of 370 grams, or about 13 ounces, of cocaine. According to Fennell, the form shows that the government must have tampered with the evidence received from Detective James because the cocaine weight changed from approximately 13 ounces while still in its packaging in the field to approximately 14.3 ounces in the laboratory. Fennell believes that counsel's failure to investigate the drug weight resulted in prejudice by causing him to testify that he had only 12 ounces of cocaine hydrochloride stored in his house and by preventing the jury from learning about the North Carolina tax form, which Fennell contends would have undermined the government's credibility with the jury.

The court concludes that this claim satisfies neither the performance nor the prejudice prong of the two-part test enunciated in <u>Strickland</u>. As to the performance prong, <u>Strickland</u> does not require defense counsel to conduct every conceivable line of investigation; counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. In this case, defense counsel did not discover the tax form before trial and only had Fennell's statement that he possessed 12 ounces of cocaine hydrochloride as opposed to 14.3 ounces of cocaine base. Because Fennell was still admitting to the possession of a trafficking amount of cocaine, defense counsel reasonably declined to investigate, and possibly, prove that Fennell, in fact, had a trafficking amount of cocaine in his residence on July 3. Thus, Fennell has not sufficiently alleged deficient performance.

13

Nor has Fennell made a sufficient showing of prejudice. Fennell's decision to testify was made knowingly and voluntarily and does not demonstrate prejudice. Moreover, the record supports the laboratory's determination of cocaine weight and type. The court's review of the record shows that Agent Cunningham used the proper procedures for securing and transferring cocaine evidence to the laboratory, where Senior Forensic Chemist Angerer used valid scientific tests to evaluate that evidence. The testing determined the weight of the cocaine to be approximately 14.3 ounces and the type of cocaine as cocaine base. Although Fennell relies on the North Carolina tax form estimate that Fennell had only 13 ounces of cocaine, a July 3, 2013 report of the investigation estimated that Fennell had approximately 14 ounces of cocaine. Thus, it is purely speculative to rely on the tax form's use of a field estimate of cocaine weight to allege a government conspiracy to increase the cocaine weight by an ounce or two once tested in a laboratory. Moreover, the tax form did not indicate whether the cocaine was cocaine hydrochloride or cocaine base.

Finally, the quantity of cocaine base for which Fennell was held responsible had no impact on his sentence. The jury found Fennell guilty of conspiring to distribute five kilograms or more of cocaine hydrochloride based on Tyree's proffer to the government, and Fennell's Sentencing Guidelines calculations were based on that quantity of cocaine hydrochloride. Moreover, Fennell's sentence was ultimately based on his status as a career offender. Accordingly, Fennell has not established that a reasonable investigation would have produced evidence of misconduct that would have undermined the government's credibility with the jury or otherwise changed the outcome of the case. The court is therefore constrained to conclude that this claim of ineffective assistance of counsel lacks merit.

## B. Prosecutorial Misconduct

In addition to asserting claims of ineffective assistance of counsel, Fennell also alleges that the government engaged in misconduct in relation to the North Carolina tax form and a handwritten note.

### 1. North Carolina Tax Form

After trial, Fennell's sister found the North Carolina tax form in his mail. As explained above, the tax form listed the amount of cocaine attributable to Fennell as approximately 13 ounces while a later laboratory report attributed approximately 14.3 ounces of cocaine to Fennell. Based on the difference in drug weights, Fennell alleges various theories of government misconduct. After reviewing the record, the court believes that this claim of prosecutorial misconduct is barred by procedural default and is, in any event, without merit.

First, because Fennell received the tax form before his direct appeal but did not raise the instant prosecutorial misconduct claim until this § 2255 motion,[3] the claim is barred by the doctrine of procedural default unless Fennell can demonstrate either cause and prejudice or actual innocence. See Massaro v. United States, 538 U.S. 500, 504 (2003). Ineffective assistance of counsel can establish cause for procedural default. See Murray v. Carrier, 477 U.S. 478, 489 (1986). Construing Fennell's pro se § 2255 motion liberally, Fennell appears to argue that defense counsel was ineffective in failing to move for a new trial based on the tax form or to raise the issue in a direct appeal, thereby excusing Fennell's failure to raise the instant claim until this § 2255 motion. Mot. to Vacate at 8. However, for the reasons set forth above, Fennell has

_____

[3] In his § 2255 motion, Fennell claims that he did not raise this claim in a direct appeal because it was not part of the record yet. However, in the memorandum accompanying the motion, Fennell claims that he received the tax form prior to sentencing.

not established a reasonable probability that disputing the laboratory report's drug weight would have changed the result in this case. Thus, Fennell cannot satisfy the prejudice prong of Strickland.

Second, even if this claim was not procedurally defaulted, it would fail because Fennell has not alleged sufficient facts to obtain relief under § 2255. The court evaluates the sufficiency of Fennell's factual allegations in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. Juniper v. Zook, 876 F.3d 551, 564 (4th Cir. 2017). Under this standard, the court construes the facts in the light most favorable to Fennell and draws all reasonable inferences in his favor to determine whether Fennell's claim for prosecutorial misconduct "states a claim for relief that is plausible on its face." Id. (internal citations and quotation marks omitted).

Fennell alleges prosecutorial misconduct under Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959). In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a Brady violation, a defendant must: "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

Under <u>Napue,</u> a defendant may establish prosecutorial misconduct based on false testimony or falsified documents by showing both that the testimony or documents presented were false and that the government knowingly used the perjured testimony or falsified documents to secure a conviction. 360 U.S. at 269; <u>Boyd v. French</u>, 147 F.3d 319, 329 (4th Cir. 1998). In addition, use of such false testimony or documents must have "affected the judgment of the jury." <u>Boyd</u>, 147 F.3d at 330 (internal quotation marks omitted).

In reliance on <u>Brady</u> and <u>Napue</u>, Fennell appears to allege that the government suppressed the tax form, induced the false testimony that Fennell possessed 14.3 ounces of cocaine base, and used a false laboratory report.[4] After reviewing Fennell's factual allegations, the court is constrained to find that these allegations fail to state a claim under <u>Brady</u> or <u>Napue</u> and do not warrant an evidentiary hearing or discovery.

Viewing the tax form in the light most favorable to Fennell, the court finds that it could have been used to impeach police or other government witnesses about the amount of cocaine found in Fennell's residence or to undermine confidence in the government's theory that Fennell possessed the cocaine as part of the charged conspiracy rather than for his occasional cocaine sales.

However, Fennell has not sufficiently alleged that the government suppressed the tax form. According to Fennell, the suppression was effectuated by preventing Fennell from accessing his mail, and thus the mailed tax form, until after his trial by holding him in an isolation unit. Although "the individual prosecutor has a duty to learn of any favorable evidence

---

[4] Fennell expressly asserts that he is not making a sentencing claim based on the drug weight attributed to him. Accordingly, this discussion is limited to whether the tax form would have reasonably undermined confidence in or affected the jury's verdict.

known to the others acting on the government's behalf" in furtherance of the prosecution, Kyles v. Whitley, 514 U.S. 419, 437 (1995), there is no Brady obligation "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked," United States v. Wilson, 901 F.2d 378 (4th Cir. 1990). The decision to hold Fennell in an isolation unit was unconnected to the prosecution of his case. Moreover, Fennell had the ability to direct his counsel or his sister, who received his forwarded mail, to check his mail for any relevant information. The tax form was dated over nine months before Fennell's trial. Once Fennell was released from the isolation unit, he had the opportunity to find the tax form in his mail and raise this issue in a motion for a new trial or in a direct appeal, neither of which was done.

Nonetheless, even had the defense used the tax form during the trial, Fennell has not plausibly alleged materiality for purposes of Brady or Napue. As described above, the record contains substantial evidence to support the laboratory findings. Most significantly, police notes from the July 3, 2013 search estimate the amount of cocaine recovered from Fennell's residence to be approximately 14 ounces, thereby supporting the laboratory findings. The tax form itself does not establish that Fennell had 12 ounces of cocaine hydrochloride. However, even assuming error in the laboratory findings, the tax form shows that Fennell possessed a trafficking amount of cocaine two days after Tyree visited Fennell's townhome and was arrested in connection with a controlled purchase of cocaine. If the court credits Fennell's factual testimony, as opposed to his legal conclusion that he is not guilty of participating in the charged cocaine trafficking conspiracy, Fennell admitted to occasionally selling cocaine, using paraphernalia associated with drug trafficking, and possessing a trafficking amount of cocaine in

his residence on July 3. Fennell also relies on Tyree's grand jury statement that Fennell and Tyree had a usual course of business for selling cocaine.

Additionally, the court finds this case distinguishable from the recent Fourth Circuit opinion in Juniper v. Zook, 876 F.3d 551. In that case, the government suppressed a witness statement describing a "potential alternative perpetrator" to the crime for which the prisoner had been convicted. Id. at 570. The Fourth Circuit recognized that the district court made credibility determinations better suited for an evidentiary hearing and that "the withheld evidence would have raised opportunities to attack . . . the thoroughness and even the good faith of the investigation." Id. at 569-70 (internal quotation marks omitted). The Court therefore ruled that the district court reversibly erred in denying a prisoner's request for an evidentiary hearing after finding that the prisoner had not plausibly alleged materiality under Brady. Id. at 571.

In this case, the court resolves all credibility determinations regarding the factual allegations in Fennell's favor. Moreover, although when viewing the tax form in the light most favorable to Fennell, the form could have raised opportunities to attack the thoroughness and good faith of the investigation in this case, the tax form itself and Fennell's admissions prove that Fennell possessed a trafficking amount of cocaine. Finally, Fennell's allegations of government misconduct are far more conclusory and speculative than the allegations in Juniper. Such conclusory allegations do not justify postconviction relief. See Jones v. Polk, 401 F.3d 257, 269-70 (4th Cir. 2005); United States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004).

Nor do such allegations provide a basis for an evidentiary hearing. See Jones, 401 F.3d at 269-70; Roane, 378 F.3d at 401. Having determined that "the files and records of the case conclusively show that the prisoner is entitled to no relief," the court denies Fennell's request for

an evidentiary hearing on this claim. 28 U.S.C. § 2255(b); United States v. Ray, 547 F. App'x 343, 345 (4th Cir. 2013) (per curiam) (noting that an evidentiary hearing is required if the prisoner presents a "colorable" claim for relief under § 2255 "showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue" (citing United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000)). For the same reason, the court does not believe that Fennell has established "good cause" to conduct discovery on this issue. See Rule 6(A) of the Rules Governing Section 2255 Proceedings. Therefore, the court grants the government's motion to dismiss Fennell's claims of prosecutorial misconduct based on the tax form.

## 2. Handwritten Note

Fennell also asserts that, after trial, he found an unauthored, undated note in the discovery material that states: "tell me about Bramblegate. We didn't decide until today for you to testif[y]. Lying is not what you go around doing but based on circumstances, you may lie. Heat Sealer. Scales." Handwritten Note. According to Fennell, this note indicates that the government induced false testimony, in violation of Napue. However, Fennell only speculates as to which witness gave false testimony and to the content of the lie. The note does not contain an author or any markings indicating that it belonged in the discovery file. The court therefore has no basis upon which to determine whether any particular witness gave false testimony or whether the government knowingly induced such perjured testimony. Thus, this claim is too vague and conclusory to warrant relief. See Jones, 401 F.3d at 269-70; Roane, 378 F.3d at 401. Such speculative and vague allegations also do not justify the holding of an evidentiary hearing, see

Jones, 401 F.3d at 269-70; Roane, 378 F.3d at 401, or provide good cause for permitting discovery, see Rule 6(a) of the Rules Governing Section 2255 Proceedings.

Even assuming the validity of the note, it does not establish a basis for an evidentiary hearing or discovery because testimony about the heat sealer or scales would not have affected the judgment of the jury. As described above, regardless of who packaged the cocaine confiscated in connection with Tyree's arrest on July 1, the record shows that Tyree went to Fennell's townhome, left with a bag, and was later discovered in connection with a bag full of a trafficking amount of cocaine that Tyree attributed to Fennell. Additionally, because Fennell's sentence is premised on his designation as a career offender, determining whether all of the drugs found with Tyree were properly attributable to Fennell is immaterial to his sentence. Because this prosecutorial misconduct claim lacks merit, Fennell's allegation of ineffective assistance of counsel for failing to investigate the alleged misconduct also fails. See Strickland, 466 U.S. at 687.

### C. Cumulative Error

Finally, Fennell argues throughout his § 2255 motion that he is entitled to relief under the cumulative error doctrine, which affords relief when multiple harmless errors prejudice a defendant in a manner equivalent to an individual reversible error. Basham, 561 F.3d at 330. To determine whether the doctrine applies, a court "evaluates only [the] effect of matters determined to be error, not [the] cumulative effect of non-errors." Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998). Having concluded that Fennell has not demonstrated any error, the court rules that the cumulative error doctrine does not apply to this case.

## Conclusion

For the reasons stated, the court concludes that Fennell is not entitled to appointment of counsel or to relief under § 2255. Consequently, the court will grant the government's motion to dismiss and deny Fennell's motion. Additionally, because Fennell has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 8th day of January, 2018.

_____
Senior United States District Judge